UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHETANKUMAR PRAVIN PATEL, | ) | CASE NO. 5:10CV2313 |
| | ) | |
| PETITIONER, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | |
| STUART HUDSON, | ) | **MEMORANDUM OPINION** |
| | ) | |
| RESPONDENT. | ) | |

Before the Court is the Report and Recommendation ("R&R") of Magistrate Judge James. R. Knepp II, recommending dismissal of this petition for writ of habeas corpus filed under 28 U.S.C. § 2254. (Doc. No. 11.) Petitioner filed objections. (Doc. No. 12.) Respondent filed neither his own objections nor any response to petitioner's objections. Pursuant to Fed. R. Civ. P. 72(b)(3), the Court has conducted its de novo review of the matters raised in the objections. For the reasons discussed below, the R&R is accepted.

**I. BACKGROUND**

In May 2007, petitioner was indicted by a grand jury on one count each of aggravated murder, tampering with evidence, and abuse of a corpse, in connection with the death of his wife, Sejal. (Doc. No. 6-1 at 113-14.) On November 20, 2007, following a jury trial in the Summit County Court of Common Pleas, he was convicted on all three charges and was thereafter sentenced to 30 years to life imprisonment for aggravated murder, three years for

tampering with evidence, and one year for abuse of a corpse, all to run concurrently. (*Id*. at 140-43.)

Represented by new counsel, petitioner filed a direct appeal.[1] (*Id*. at 146.) On September 17, 2008, the Ninth District Court of Appeals affirmed the convictions and sentences and, on February 24, 2009, the Ohio Supreme Court declined jurisdiction and dismissed the appeal as not involving any substantial constitutional question.[2] (*Id*. at 261; 330.)

---

[1] Petitioner asserted six assignments of error:

    1.    The court committed error, prejudicial to Defendant-Appellant, by permitting the state to introduce the testimony of an attorney that Rupal Patel, a testifying co-defendant, had given a prior consistent statement.

    2.    It was error for the court to permit the testimony of a prior consistent statement under Evid. R. 801(D)(1)(b), when the prior statement is not consistent with the trial testimony.

    3.    Defendant-Appellant was denied his constitutionally protected right to effective assistance of counsel under *Strickland v. Washington* (1984), 466 U.S. 688.

    4.    It was error for the court to have failed to instruct the jury regarding the limited purposes for which other acts testimony was received.

    5.    The trial court committed error prejudicial to Appellant by admission of other acts testimony.

    6.    The jury verdict is against the manifest weight of the evidence.

(Doc. No. 6-1 at 149-50.)

[2] Before the Ohio Supreme Court, petitioner raised five propositions of law:

    I.    The state may not bolster the credibility of a testifying co-defendant with the hearsay testimony of the witness's attorney that, during attorney/client discussions, the Witness/Client told the same story. The hearsay exception of Evid. R. 801(D)(1)(b) forbids such evidence unless the prior statements are themselves consistent and they were made before the emergence of a motive or influence to invent or falsify.

    II.    When other acts testimony is admitted over pretrial and trial objections, and counsel fails to request a limiting instruction, due process requires the Court to evaluate the failure in the context of plain error under Crim. R. 52(B).

    III.    Defendant was denied his constitutional rights to a fair trial by the [i]ntroduction of other acts testimony over his objection.

    IV.    Defendant was denied his constitutionally protected right to effective assistance of counsel under *Strickland v. Washington* (1984), 466 U.S. 688.

    V.    Defendant was denied his constitutional rights to due process of law because the jury verdict of guilty was against the manifest weight of the evidence.

(Doc. No. 6-1 at 289.)

While the direct appeal was pending, petitioner's counsel also filed in the trial court a petition for post-conviction relief, arguing that petitioner's Sixth Amendment right to effective assistance of trial counsel had been violated in several respects based on evidence both within and *de hors* the trial record. (Doc. No. 6-1 at 238, 243-46.) The trial court denied this petition by journal entry dated September 12, 2008 and, upon petitioner's request, followed up with written findings of fact and conclusions of law. (Doc. No. 6-2 at 359; 389-95.) Representing himself, petitioner timely appealed the denial of post-conviction relief[3] and, on June 30, 2009, the court of appeals affirmed the trial court's ruling. (*Id*. at 461.) Petitioner filed a pro se appeal to the Ohio Supreme Court,[4] which, on October 14, 2009, once again denied leave to appeal. (*Id*. at 497.)

---

[3] Petitioner raised three assignments of error:

    1.    The trial court erred to the prejudice of Defendant-Appellant's Sixth Amendment right by not finding counsel ineffective for interfering with his understanding and right to testify and abused its discretion by failing to hold an evidentiary hearing.

    2.    Defendant-Appellant was denied his Sixth Amendment right to effective assistance of counsel and to have compulsory process for obtaining witnesses in his favor when trial counsel failed to investigate and interview two potential witnesses favorable to his defense and the trial court abused its discretion in failing to hold an evidentiary hearing.

    3.    The trial court abused its discretion by failing to hold an evidentiary hearing and erred to the prejudice of Defendant-Appellant when the court made a blanket assessment regarding the credibility of two potential witnesses for the defense.

(Doc. No. 6-2 at 404.)

[4] In support of jurisdiction, petitioner raised three propositions of law:

    I.    When the Trial Court errs and abuses it's [sic] discretion by failing to hold an evidentiary hearing when the Defendant-Appellant demonstrated that His Trial Counsel was ineffective to His prejudice when Counsel interfered with His understanding of His rights to testify violating the Defendant-Appellant's Fifth, Sixth and Fourteenth Amendment rights under the U.S. Constitution.

    II.    When a Defendant-Appellant is denied His sixth Amendment right to effective Assistance of Counsel, and compulsory process, the Trial Court errs and abuses it's [sic] discretion when it fails to grant the Appellant's Petition for Post Conviction Relief, and/or hold an evidentiary hearing so the Appellant may further develope [sic] the claims contained therein.

    III.    When the Trial Court errs and abuses it's [sic] discretion by failing to hold an evidentiary hearing and not granting the Defendant-Appellant's Petition for Post Conviction Relief when the Appellant demonstrated that two potential witnesses would have testifyed [sic] that the State's co-defendant was commiting perjury and Trial Counsel was ineffective for failing to interview or

Petitioner next filed a pro se motion with the trial court seeking to be resentenced. He argued that his previous sentence was void and not a final appealable order because the trial court had failed to comply with Ohio Crim. R. 32(C) and that the trial court's journal entry had contained unconstitutional findings of fact. (Doc. No. 6-2 at 498.) Without explanation, on March 16, 2010, the trial court denied this motion. (*Id*. at 505.) Petitioner timely appealed (*id*. at 509),[5] but the trial court's decision was affirmed. (*Id*. at 538.) There was no appeal taken to the Ohio Supreme Court.

The instant petition was filed on October 10, 2010. (Doc. No. 1.) Represented by counsel, petitioner raised three grounds for relief:

> **First Claim for Relief (Admission of Unfairly Prejudicial Evidence)**
> The trial court erred in admitting into evidence irrelevant and improper evidence prejudicial to the defendant/appellant in the form of the admission of testimony of prior violent acts against his wife. No charges grew out of the alleged incident. The admission of the disputed evidence [was] in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.
>
> **Second Claim for Relief (Denial of Right to Testify)**
> Petitioner Patel did not voluntarily, intelligent[ly] and knowledgeably waive his right to testify. Patel was not fully advised by counsel or the court about his absolute right to testify. The actions of trial counsel intimidated Patel into not testifying. The trial court failed to conduct a colloquy with Patel to ensure that he understood this right.
>
> **Third Claim for Relief (Ineffective Assistance of Counsel)**
> Petitioner Chetan Patel's trial counsel rendered ineffective assistance at his trial so as to violate his rights under the Sixth and Fourteenth Amendments to the United States Constitution.

---

> investigate these witnesses. Violating the Defendant-Appellant's Due Process rights and Sixth Amendment right to Effective Assistance of Counsel the Conviction must be set aside.

(Doc. No. 6-2 at 475, 478, 480.)

[5] One error was assigned: "The trial court erred when it denied Mr. Chetankumar [sic] motion to enter a fininal [sic] appealable order." (Doc. No. 6-2 at 512.)

(Doc. No. 1-1 at 24, 26, 30.) In his reply to the respondent's answer to the petition,[6] petitioner "conceded that [respondent] is correct on the merits in relation to [the second] claim." (Doc. No. 10 at 6055.) Therefore, the R&R did not address this issue and this Court also need not address it.

The R&R recommends dismissal of the petition because ground one has not been exhausted and ground three, although not procedurally defaulted, fails on the merits.

## II. DISCUSSION

### A. The Standard of Review

Under Fed. R. Civ. P. 72(b)(3), "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." After review, the District Judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id*.; *see also* 28 U.S.C. § 636(b)(1)(C).

### B. De Novo Review

#### 1. Ground One

Petitioner's first ground for relief is based upon the trial court's admission of evidence of two prior domestic violence incidents, one against his wife (which resulted in no charges) and the other against another household member (for which he pled guilty to a charge of disorderly conduct). Petitioner alleges here that admission of this evidence was a due process violation.

---

[6] Both petitioner and respondent have used the long outdated terminology of "traverse" (now "reply") (Doc. No. 10) and "return" (now "answer") (Doc. No. 6). *See* Advisory Committee Notes (1976) to Rule 5 of Rules Governing Section 2254.

Before applying for a writ of habeas corpus, a state prisoner must "exhaust[ ] the remedies available in the courts of the State[.]" 28 U.S.C. § 2254(b)(1)(A). He must "fairly present federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)) (internal quotation marks omitted). "If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution." *Id*. at 365-66. "[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim . . . ." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). Further, as explained by the Sixth Circuit:

> "the exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record." *Martens v. Shannon*, 836 F.2d 715, 717 (1st Cir. 1988). Rather, the petitioner must present the ground relied upon "face-up and squarely; the federal question must be plainly defined." *Id*.; *McNair v. Campbell*, 416 F.3d 1291, 1303 (11th Cir. 2005) (citing *Martens*); *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir. 1994) (same).

*Gross v. Warden*, 426 F. App'x 349, 357 (6th Cir. 2011).

"Determining when a claim has been 'fairly presented' is contextual and individual to each case." *Houston v. Waller*, 420 F. App'x 501, 509 (6th Cir. 2011). There are "four actions a defendant can take which are significant to the determination whether a claim has been 'fairly presented': (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law."

6

*McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000) (citing *Franklin v. Rose*, 811 F.2d 322, 326 (6th Cir. 1987)).

The R&R concludes that ground one was not "fairly presented" to the state courts prior to seeking relief in this Court because, when a challenge to this evidence was brought before the state court on direct appeal (as assignments of error four and five),[7] it was based entirely upon state law, in particular Ohio Evid. R. 404(B). (*See* Doc. No. 6-1 at 166, 167 for arguments raised before the state court.) As properly noted in the R&R, "[n]o federal law was cited, described, or even implied by [p]etitioner[.]" (Doc. No. 11 at 6080, 6081.) Therefore, the R&R concludes that this ground is procedurally defaulted and need not be addressed on the merits.[8]

Petitioner "objects to the finding that a claim raised in state court may not form the basis of a federal habeas claim merely because a federal citation is not included in support of that claim in the state court document." (Doc. No. 11 at 6099.) He argues that, to be "fairly presented," the federal claim need only be the "substantial equivalent" of that presented to the state courts." (*Id.*, citing *Picard*, 404 U.S. at 278; *Gibson v. Scheidemantel*, 805 F.2d 135, 138 (3d Cir. 1986)). He asserts that, in rejecting his claim, the Ninth District Court of Appeals relied upon *State v. Maurer*, 15 Ohio St. 3d 239 (1984), which, in turn, had relied upon *United States v. Brady*, 595 F.2d 359 (6th Cir. 1979).[9]

---

[7] *See* note 1, *supra*.

[8] "Without fair presentation to that intermediate appellate court, a full round of state appellate review of the claim could not have taken place even if [p]etitioner fairly presented the claim to the Ohio Supreme Court." (Doc. No. 11 at 6082.) This Court notes that petitioner raised the same issues before the Ohio Supreme Court as propositions of law II and III, based solely on state law. (*See* Doc. No. 6-1 at 295-297.)

[9] When considering the fifth assignment of error, the state appellate court cited *Maurer*, 15 Ohio St. 3d at 265 for the proposition that "[a] trial court possesses broad discretion with respect to the admission of evidence." (Doc. No. 6-1 at 266.) At page 265 of the *Maurer* case, there is a discussion of the appropriateness of admitting gruesome photographs of a murder victim under circumstances where the defendant stipulated that he had caused the death.

7

Petitioner's argument is, quite simply, that, because the state court of appeals, in addressing his fifth assignment of error, relied upon an Ohio case, which, in turn, relied upon a federal appeals court case, his current argument on ground one is the "substantial equivalent" of his argument on assignments of error four and five in the state court. He claims that *Dye v. Hofbauer*, 546 U.S. 1, 4 (2005) stands for the proposition that "a habeas petitioner can fairly present a claim to the state courts by simply citing the state courts to a case law that contains the requisite constitutional analysis." (Doc. No. 12 at 6101.)

The fundamental problem with petitioner's argument here is that, when he appealed his convictions, *he* did not rely upon any federal statutory or case law, or upon state case law that cited federal law and applied federal constitutional analysis. It may be that the state appellate court cited an Ohio case that mentioned in passing a federal circuit opinion; but this hardly constitutes fair presentation *by petitioner*.[10]

In light of the above, the Court accepts the R&R with respect to ground one and overrules petitioner's objection.

**2.      Ground Three**

In his third ground for relief, petitioner asserts that, in violation of the Sixth Amendment, his trial counsel provided ineffective assistance by committing the following errors:

---

The court in *Maurer* briefly discussed *United States v. Brady*, 595 F.2d 359 (6th Cir. 1979), identifying it as a "similar case," wherein graphic photographs of victims at the scene of a bank robbery were admitted over objection under circumstances where the defendant had stipulated that the deaths were caused by gunshot wounds. Even if *Maurer* and *Brady* were applicable, which this Court highly doubts given the factual disparity as compared to the instant case, it was not petitioner that raised the argument *and* the *Brady* case was not cited by *Maurer* for any constitutional principle or analysis. Both *Maurer* and *Brady* involved discussions of how to apply evidence rules.

[10] Furthermore, the relevant case law for purposes of habeas corpus analysis is "clearly established Federal law, *as determined by the Supreme Court of the United States*[.]" 28 U.S.C. § 2254(d)(1) (emphasis added).

8

(1) Counsel failed to fully investigate in preparation for trial and, as a result, did not challenge the testimony provided by Vijay that he paid Meghna and Rasik, when such testimony was later sworn to be false;[11]

(2) Counsel permitted testimony, without objection or a request for curative instruction, that petitioner practiced his right to pre-arrest silence and requested an attorney upon being questioned by the police;[12]

(3) Counsel permitted inadmissible hearsay and opinion testimony from Detective Scarl, without objection, to relate his theories and beliefs about how and why the murder occurred;[13]

(4) Counsel failed to object during the prosecution's closing argument when petitioner was referred to as a "wife abuser" and "adulterer," was said to have married Sejal for money from her family, and was involved in "domestic violence";[14] and

(5) Counsel failed to request jury instructions about the limited purpose for which the court admitted evidence of prior domestic violence incidents and about the jury's right to consider the absence of motive as a circumstance that may be considered in weighing the evidence of guilt.[15]

A criminal defendant has a constitutional right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984) ("'the [Sixth Amendment] right to counsel is the right to effective assistance of counsel'") (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. An ineffectiveness claim has two components: (1) "the defendant must show that counsel's performance was deficient[,]" which requires a "showing that counsel made errors so serious that

---

[11] *See* Doc. No. 1-1 at 30-31, ¶¶ 26-28.

[12] *See* Doc. No. 1-1 at 31, ¶¶29-30.

[13] *See* Doc. No. 1-1 at 31-32, ¶ 31.

[14] *See* Doc. No. 1-1 at 32, ¶ 32.

[15] *See* Doc. No. 1-1 at 32, ¶¶ 33-34.

counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[;]" and, (2) "the defendant must show that the deficient performance prejudiced the defense[,]" which requires a "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. In other words, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. "Judicial scrutiny of counsel's performance must be highly deferential[ ] . . . [and] every effort [should] be made to eliminate the distorting effects of hindsight[.]" *Id*. at 689.

> Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Id.* at 690.

After examining petitioner's particular challenges in light of the state court record (*see* Doc. No. 11 at 6085-86), the R&R concludes that "the [c]ourt cannot find any remote chance, let alone a reasonable probability, that the outcome of the proceedings would have been different but for these alleged errors by [p]etitioner's trial counsel." (Doc. No. 11 at 6086.) The R&R recommends denial and dismissal of the petition.

Although petitioner's objections are little more than reiteration of the allegations in his petition, the Court has identified two objections, one rather specific (relating to the first error alleged by the petition) and the other much more general (relating to the second through

10

fifth errors alleged). First, petitioner objects to the R&R's conclusion that counsel's failure to investigate two possible witnesses who might have helped his case by impeaching key prosecution witnesses did not meet the *Strickland* test. The R&R concluded there was more than sufficient evidence in the record from which a jury could convict and, therefore, there is no reasonable probability that the trial outcome would have been different had these missing witnesses testified as averred. Petitioner argues that counsel's deficient performance in failing to obtain the testimony of these two witnesses undermined confidence in the adversarial nature of the trial. Second, petitioner generally asserts that this same objection applies to all of counsel's other alleged failures because those must be judged under *Strickland* from the perspective of their cumulative effect on the trial.

With respect to the first, more particular objection regarding trial counsel's alleged failure to fully investigate in preparation for the trial, petitioner seems to challenge the R&R's conclusion that there was otherwise "sufficient evidence" in the record to convict. In his petition, petitioner alleged:

> . . . Testimony was provided by the co-defendant Vi[j]aykuma[r] Patel ("Vijay") that Chetan was involved in providing to him $10,000.00 toward the killing of his wife, Sejal. Vijay further testified that he paid $4,000.00 to one Meghna and $2,000.00 to one Rasik, out of the $10,000.00 to help in the killing of appellant's wife. This testimony was false.

(Doc. No. 1-1 at 30, ¶ 26.) Petitioner's father, Pravin Patel, stated in an affidavit attached to petitioner's state court postconviction petition (*see* Doc. No. 6-1 at 253) that, after the trial, he contacted Meghna and Rasik, who both denied having been paid any money or having been contacted by petitioner's trial counsel. Petitioner argues that it was ineffective assistance of counsel not to investigate these two potential witnesses who could have contradicted the state's

11

key witnesses, co-defendants Vijay Patel and Rupal Patel.[16] The R&R concluded that the potential witnesses would have impeached only Vijay, but not Rupal, who had effectively bolstered Vijay's testimony, and, therefore, there was no possibility of a different trial outcome.[17]

Petitioner first states that "[t]he problem with this conclusion is that it presupposes the complete credibility of Rupal." (Doc. No. 12 at 6103.) But, of course, that argument is to no avail because credibility determinations are not to be made by a habeas court; they are reserved to the trier of fact. *Moreland v. Bradshaw*, 699 F.3d 908, 918 (6th Cir. 2012) (quoting *Brooks v. Tennessee*, 626 F.3d 878, 899 (6th Cir. 2010) (Daughtrey, J., concurring), quoting *Schlup v. Delo*, 513 U.S. 298, 330 (1995)) ("[U]nder *Jackson* [*v. Virginia*], the assessment of the credibility of witnesses is generally beyond the scope of [habeas] review.").

Petitioner next asserts that, because counsel's deficient performance "undermined the confidence in the adversarial nature of the trial[,]" (Doc. No. 12 at 6104), "a reliance on otherwise sufficient evidence is an incorrect interpretation of *Strickland*." (*Id.*) However, petitioner does not state *how* a failure to bring in witnesses to impeach testimony otherwise bolstered by other witnesses' testimony would undermine confidence in the proceedings. The R&R correctly concludes that the record evidence was sufficient to convict and, even if one or both of these other witnesses had impeached Vijay's testimony, it would not have mattered to the outcome of the trial. The Court finds no error in this conclusion. Even if the Court were to find

---

[16] At the time of the murder, Chetan was engaged in a long-time affair with Rupal, which had begun while the two were still living in India before Chetan moved to the United States and married Sejal. (Doc. No. 6-1 at 280, ¶ 53.)

[17] The R&R further concluded that there was sufficient testimony from other witnesses (Chirag, Tarun, Detective Scarl, and others) for a reasonable jury to convict Chetan.

an error of constitutional magnitude in the failure to bring in these two witnesses, the outcome would be no different and, therefore, there would be no prejudice under the *Strickland* test.

Petitioner also argues, with little, if any, support, that all of counsel's other "many errors" had a cumulative effect which constituted prejudice under the *Strickland* standard.[18] It is true that "the *Strickland* test requires that prejudice be evaluated in light of the cumulative effect of all constitutionally infirm actions by counsel." *Mackey v. Russell*, 148 F. App'x 355, 365 (6th Cir. 2005). However, the starting point is "constitutionally infirm actions." Petitioner fails to show how any of the other challenged actions of counsel were constitutionally infirm, as opposed to mere trial strategy disagreed with in hindsight.

The Court rejects petitioner's barebones assertions that his trial counsel's performance fell "below an objective standard of reasonableness," (Doc. No. 12 at 6103), and that there was a "'reasonable probability' that the outcome of the trial would have been different absent the error." (*Id.* at 6104.) The Court, therefore, overrules petitioner's objections with respect to the third claim and accepts the R&R.

---

[18] The Court highly doubts whether petitioner made this "cumulative effect" argument in the postconviction petition. (*See* Doc. No. 6-1 at 238-253). However, because it is clear that petitioner made a general *Strickland* argument therein, the Court will not split hairs over whether this particular argument was exhausted.

## III. CONCLUSION

For the reasons discussed above, petitioner's objections to the R&R are overruled and the R&R is accepted. The petition for habeas corpus is denied and the case is dismissed. Further, the Court certifies that an appeal from this decision could not be taken in good faith and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED**.

Dated: February 20, 2013

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**